MATILDA KURLE v. THOMAS J. BURKE

SUPERIOR COURT      NEW HAVEN COUNTY      FILE No. 72614

Memorandum filed January 23, 1951.

*William L. Beers*, of New Haven, for the Plaintiff.

*Lyman Steele*, of New Haven, for the Defendant.

ALCORN, J.  The plaintiff's complaint claims damages for a trespass, coupled with claims for injunctive relief to restrain the defendant from entering on her land and from cutting an elm tree near the boundary, and requiring him to restore plaintiff's land to its condition prior to the alleged trespass.  The crux of the dispute between the parties is the location of the front portion of the boundary line between their properties, which abut each other on the west side of route 1 in the East River section of the town of Madison.  The evidence discloses no threat to the elm tree as alleged, and no act by the defendant done to the plaintiff's claimed property beyond the defendant's use of the disputed area for parking automobiles in connection with his business.  The area in dispute is a triangle with its base 7.2 feet on the highway and its apex approximately 33 feet from the highway.

The plaintiff acquired her property by warranty deed on May 27, 1922.  The deed bounds the property "East by highway 96 feet."  The description therein of the north boundary, which is in dispute, reads "North by land formerly of Jane Shelley and second described piece about three hundred feet by a stone wall in part and in part by a straight line in continuation of stone wall in the same straight line to fresh meadow."  The west boundary is "by land of Sarah Shelley" and is not significant on the issue here.  The south bound is "by land of George W. Knox.  Said South line beginning at a point in the west line of said highway distant 96 feet from said stone wall and thence running westerly to the middle of a small sweet apple tree and continuing thence westerly in the same straight line to said fresh meadow."

Two implications at once appear from the language used—first that the stone wall described ran, at that time, to the street, so that a measurement from it could be taken to fix the southeast corner, and, second, that the north line of the lot was "a straight line in continuation of stone wall in the same straight line." This corroborates the plaintiff's testimony that, at the time of purchase, there was a stone wall to a point about a foot or six inches toward the highway from the elm tree mentioned.

The wall was, however, in dilapidated condition and overgrown with poison ivy, grapevine, and honeysuckle. Sometime between 1922 and 1947 the stones forming the end of the wall toward the highway disappeared or were removed but the area was so overgrown that their absence was not noticed. By 1950 the wall ended approximately thirty-three feet west of the highway. Before that date, however, a wire fence had been strung from the vicinity of the present end of the wall to the street, substantially on a line with the elm tree. This was substantially the line of the original stone wall and it ran along the plaintiff's, or southerly, side of the elm tree. The plaintiff has no recollection of seeing the stones of the old wall in the disputed area within the last twenty years.

Several surveys or maps of the lines of plaintiff's property have been made. One survey in evidence, dated December, 1950, indicates that "a straight line in continuation of stone wall," to use the words of plaintiff's deed, would, when applied to the approximately 500 feet of wall shown to be still standing, terminate at a highway boundstone which is 7.2 feet southerly of the point which the plaintiff claims is the present northeast corner of her property. This line would also be substantially along the line of the wire fence which was erected after the wall in that section disappeared. It would also be the line as claimed by the defendant.

The survey dated December, 1950, located a stump of a tree which is undoubtedly all that remains of the "small sweet apple tree" mentioned in the description of plaintiff's south boundary. That stump is shown on that survey to be substantially 96 feet south of the presently existing section of stone wall. Comparison with a map in evidence dated August 9, 1922, indicates that a line drawn through the middle of that stump from the highway westerly "in the same straight line," as stated in plaintiff's deed, would touch the highway substantially 96 feet southerly of the

point where a straight line extended from and in line with the existing part of the stone wall on the north line would touch the highway.

The defendant acquired the property abutting the plaintiff's on the north by warranty deed on February 15, 1947. The deed describes his south boundary as "Southerly by land now or formerly of Matilda Kurle, 335 feet, more or less." Mesne conveyances by his predecessors in title as far back as June, 1919, describe his south boundary in the same general way, making reference either to "Michael Kurle" or plaintiff's predecessor in title as the owner of the land on the south.

Continuously and openly from 1931 until the defendant's purchase, the defendant's predecessors in title used the land to the wire fence above referred to. They filled and graded the property, planted flowering shrubs on their side of the fence, and cut the brush on their side of the fence. The plaintiff at no time offered any objection. At the time of sale to the defendant, his predecessors in title pointed out to him the portion of the stone wall now existing, the edge of the crushed rock and stone fill which they had installed, and a post on plaintiff's side of the elm tree holding strands of wire as the boundary line. Since his purchase the defendant has occupied and used, principally for parking automobiles, the area up to this line, which is the same area over which his predecessors in title had exercised open, visible and exclusive ownership continuously since 1931. During this same period the evidence establishes no act of dominion by the plaintiff on the defendant's side of this line.

A construction of the language of the plaintiff's deed, the existing monuments, and the uses made of the area in dispute since 1931, consistently support the conclusion that there has been no trespass by the defendant upon any land of the plaintiff.

Enter judgment for the defendant.